UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                              )
MUSE APARTMENTS, LLC,         )
                              )   Case No. C12-2021RSL
              Plaintiff,      )
        v.                    )
                              )   ORDER REGARDING MOTIONS
TRAVELERS CASUALTY AND        )   FOR SUMMARY JUDGMENT
SURETY COMPANY OF AMERICA,    )
                              )
              Defendant.      )
_____)

This matter comes before the Court on "Travelers' Motion for Summary Judgment" (Dkt. # 21), "Plaintiff's Motion for Partial Summary Judgment re Standing and Scope of Coverage" (Dkt. # 24), and defendant's "Motion for Judicial Notice of Court Documents" (Dkt. # 19). Plaintiff has asserted various causes of action, including breach of contract, bad faith, and Consumer Protection Act violations, based on the premise that an insurance policy issued by Travelers to non-party 1031 ECI, LLC, is a fidelity bond that protects 1031 ECI's clients pursuant to RCW 19.310.040(1)(a). Plaintiff seeks a summary determination that it may make a claim under the fidelity policy pursuant to RCW 19.310.050 or, if the Travelers policy does not cover losses to client property, that Travelers is nevertheless obligated to provide coverage or otherwise make plaintiff whole. Travelers seeks summary judgment on all of plaintiff's claims on the grounds that 1031 ECI's material misrepresentations voided the policy prior to the date on which plaintiff notified Travelers of its claim and/or that the policy insures

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT

1031 ECI against only losses of its own money or property, not losses of its clients' money or property.

**A. REQUEST FOR JUDICIAL NOTICE**

In support of its motion, Travelers offers a number of documents that were filed in state court actions brought by three other clients of 1031 ECI, as well as documents related to petitions for bankruptcy filed by or on behalf of 1031 ECI and its president, Richard Dance. Pursuant to Fed. R. Ev. 201, the Court may take judicial notice of facts that are "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Because they are not reasonably subject to dispute, the Court will take judicial notice of the existence, docket, and status/resolution of the five actions. Allegations and argument contained in the papers or asserted in open court have not been judicially established, however, and will not be adopted as fact simply because they were presented in another judicial proceeding. Nor has the Court considered for the truth of the matter asserted statements made in declarations filed in proceedings other than this one. Such statements are clearly hearsay under Fed. R. Ev. 801(c). Defendant's reliance on memoranda and declarations filed in other actions to support its statement of the facts is therefore unavailing.

While the Court takes judicial notice of the state court's comments and decision in Alderview Apartments, LLC, v. 1031 ECI, LLC, et al., King County Superior Court No. 11-2-24765-3SEA (Nov. 4, 2011), the analysis is not binding on the Court and will be considered only to the extent it is persuasively reasoned.

**B. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012). The party seeking summary dismissal of the case "bears the

initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of the materials in the record that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)(1)).  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to identify specific factual disputes that must be resolved at trial.  Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1059 (9th Cir. 2012).  The mere existence of a scintilla of evidence in support of the non-moving party's position will not preclude summary judgment, however, unless a reasonable jury viewing the evidence in the light most favorable to the non-moving party could return a verdict in its favor.  U.S. v. Arango, 670 F.3d 988, 992 (9th Cir. 2012).

Taking the evidence presented in the light most favorable to the non-moving party[1] and having heard the arguments of counsel, the Court finds as follows:

In response to a lack of state law requirements governing the conduct of persons who facilitate like-kind exchanges pursuant to Section 1031 of the Internal Revenue Code, the Washington State Legislature put in place "a statutory framework that provides some consumer protections to those who entrust money or property to persons acting as exchange facilitators." RCW 19.310.005.  Between 2009 and 2012, exchange facilitators such as 1031 ECI were required to "[m]aintain a fidelity bond or bonds in an amount of not less than one million dollars executed by an insurer authorized to do business in this state" or to provide one of the other specified protections for client funds.[2]  In August 2009, 1031 ECI, working through an insurance

---

[1] Because Travelers opted to rely on memoranda and declarations submitted in other proceedings as support for its statement of facts, the Court largely adopts the facts as set forth in "Plaintiff's Motion for Partial Summary Judgment" (Dkt. # 24).

[2] RCW 19.310.040(1)(a) was revised on June 7, 2012, and again on July 28, 2013.  The revised language makes clear that the required fidelity bond must be "for the benefit of a client of the exchange facilitator that suffers a loss as a result of the exchange facilitator's covered dishonest act."

broker, submitted a "Fidelity Bond/Commercial Crime Insurance Application" to Travelers. Decl. of Stephanie L. Grassia (Dkt. # 27), Ex. H.  1031 ECI told the broker, Bell-Anderson Insurance, that it wanted a fidelity policy and that RCW 19.310 required it to have at least $1 million available for the benefit of its clients.  Decl. of D. Richard Dance (Dkt. # 26), Ex. A at ¶ 9.[3]  In September 2009, Bell-Anderson issued a "proof of insurance" indicating that a policy had been obtained that provided insurance against losses resulting from the theft of client money or property.  Decl. of D. Richard Dance (Dkt. # 26), Ex. C at 2.[4]  The "proof of insurance" was incorrect, however.  The policy that was procured and subsequently provided to 1031 ECI expressly excluded coverage for theft of client funds.  Dkt. # 9 at 13.  The policy did contain fidelity provisions, but the coverage was limited to losses caused by employee theft of the employer's property.  Dkt. # 9 at 14.

In 2011, plaintiff sold an apartment complex located at 911 1st Ave. W. in Seattle. In order to take advantage of certain tax benefits offered by Section 1031 of the Internal Revenue Code, plaintiff engaged 1031 ECI to hold sale proceeds of $771,153.46 until plaintiff could find a suitable replacement property to purchase.[5]  Plaintiff ultimately decided not to make a like-kind investment purchase and requested the return of the money.  1031 ECI was unable to comply: it had apparently made investments that resulted in the loss of plaintiff's (and other clients') money.  Decl. of William H. Levings (Dkt. # 25) at ¶ 7.  Plaintiff contends that the loss of the sale proceeds was the result of dishonest acts on the part of 1031 ECI and made a claim for the lost proceeds under the Travelers policy.

---

[3] Travelers' objection to Mr. Dance's declaration (a sworn statement regarding matters of which he has personal knowledge offered during this proceeding) is overruled.

[4] Travelers' objection to "Evidence of Insurance" provided by the broker is overruled.

[5] A party cannot act as his or her own exchange facilitator. 26 C.F.R. § 1.1031(k)-1(g)(4)(iii).

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT                 -4-

**A.  Interpretation of Insuring Agreement**

While it is clear that 1031 ECI was required by law to obtain a fidelity policy or bond to protect its clients from the dishonest acts of the facilitator and its employees, it failed to do so.  The fidelity policy that 1031 ECI purchased provided coverage for direct losses 1031 ECI incurred as a result of its employees' theft of its own money, securities, or other property.  Expressly excluded were losses suffered by clients as a result of employee thefts.  The two types of coverages are distinct and, as the record shows, can be purchased separately.  Nor is the policy ambiguous regarding what is and what is not covered:  the declaration sheet lists "Employee Theft of Client Property" as "Not Covered" and provides that "[i]f 'Not Covered' is inserted above opposite any specified Insuring Agreement . . . such Insuring Agreement and any other reference thereto is deemed to be deleted from this Crime Policy."  Thus, 1031 ECI purchased a policy that did not cover theft of a client's property.  RCW Ch. 19.310 requires exchange facilitators to put appropriate safeguards in place, but if a facilitator purchases the wrong coverage, the statute does not expand the insuring agreement or otherwise convert the coverage that was purchased into a different kind of policy.  Plaintiff's breach of contract, bad faith, and Consumer Protection Act claims therefore fail as a matter of law.

**B.  Implied Contract or Estoppel Theories**

Plaintiff argues that, if the Travelers policy does not cover losses to client property, Travelers should be estopped from denying coverage and/or the contract should be modified so that it satisfies 1031 ECI's reasonable expectations of coverage.  For purposes of this analysis, the Court will assume that Bell-Anderson was Travelers' agent and that it knew 1031 ECI wanted to obtain a policy that would satisfy RCW 19.310.040(1)(a).  Nevertheless, claims for estoppel and/or an alteration of the policy based on the reasonable expectations of the insured would be unsuccessful under Washington law in the circumstances presented here.  See Shows v. Pemberton, 73 Wn. App. 107, 111 (1994) (citing the seminal case of Carew, Shaw & Bernasconi, Inc. v. Gen. Cas. Co. of Am., 189 Wash. 329, 336 (1937), and concluding that the

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT                  -5-

doctrine of estoppel cannot be used "to broaden coverage to protect against risks not included in the policy or expressly disclaimed therein"); Findlay v. United Pac. Ins. Co., 129 Wn.2d 368, 378 (1996) ("The 'reasonable expectation' doctrine has never been adopted in Washington, and there is no reasonable expectation that no exemptions to coverage exist."); Quadrant Corp. v. Am. States Ins. Co., 154 Wn.2d 165, 172 (2005) ("[I]n Washington the expectations of the insured cannot override the plain language of the contract."). Plaintiff's contract claims cannot be saved through an estoppel or modification theory.

**C. Negligence and Leave to Amend**

In the alternative, plaintiff argues that Bell-Anderson was acting as an agent of Travelers when it placed the policy, that Bell-Anderson was negligent in procuring a policy that did not provide the coverage required by RCW 19.310.040(1)(a) and explicitly requested by 1031 ECI, that Travelers is vicariously liable for its agent's negligence, and that plaintiff suffered damages in the amount it would have recovered had the appropriate policy been placed. Although plaintiff has not asserted a negligence claim in the complaint, the factual allegations contained therein support such a claim, and defendant has long understood that plaintiff was asserting that the acts of its agent bound Travelers to compensate plaintiff for its loss. At oral argument, plaintiff specifically requested leave to amend if the Court thought the addition of a negligence claim were necessary. Defendant did not object to the timeliness or other procedural aspects of amendment, instead arguing that a negligence claim would be futile.

District courts "should liberally allow a party to amend its pleading" unless "there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Sonoma County Ass'n of Retired Employees v. Sonoma County, 708 F.3d 1109, 1117 (9th Cir. 2013) (internal quotation marks omitted). Defendant maintains that a negligence claim would be futile because, even if plaintiff were able to show that Bell-Anderson had a duty to obtain a policy that

covered theft of client funds and that Travelers is liable for damages arising from Bell-Anderson's breach of that duty, the resulting policy was voided when 1031 ECI made misrepresentations regarding the number of clients whose money had been lost, the manner in which the money was lost, and the amount of money at issue. Thus, in order to determine whether leave to amend should be granted, the Court must first consider whether a fidelity policy maintained by an exchange facilitator for the benefit of its clients under RCW 19.310.040 can be vitiated by the malfeasance of the named insured.

For purposes of this discussion, the Court will assume that all disputed issues of fact will be decided in favor of plaintiff and that Travelers knew that 1031 ECI was purchasing insurance to satisfy its obligations under RCW 19.310.040 and for the benefit and protection of its clients. If that were the case, Travelers apparently concedes that plaintiff would have the right to make a direct claim on the policy under Washington law.[6] Travelers nevertheless argues that malfeasance on the part of the named insured in providing notice of the claim voids the policy in its entirety and precludes a claim by the innocent third-party beneficiary. Such a result would be incongruous. The legislature imposed the fidelity bond requirement on exchange facilitators in order to protect clients from the fraudulent or dishonest acts of the facilitator.

---

[6] The existence of a third-party beneficiary contract (*i.e.*, one that not only benefits a third-party, but also gives rise to a direct obligation from the insurer to the third-party) is generally a matter of intent. Lonsdale v. Chesterfield, 99 Wn.2d 353, 361 (1983). Where the policy does not expressly identify the third-party as an insured or a payee, the third-party must show more than that the parties had a "desire or purpose to benefit a third party:" it must show "an intent to assume a direct obligation to that third party." Postlewaite Const., Inc. v. Great Am. Ins. Cos., 106 Wn.2d 96, 100 (1986). Construing the assumed policy in light of the circumstances under which it was made, Travelers knowingly undertook a direct obligation to 1031 ECI's clients: Travelers knew that 1031 ECI was purchasing insurance for the benefit of clients who suffered direct financial loss as a result of the exchange facilitator's infidelity and that the policy was required by RCW 19.310.040. Because the governing statute expressly provides that "[a] person who claims to have sustained damages by reason of the fraudulent act or covered dishonest act of an exchange facilitator or an exchange facilitator's employee may file a claim on the fidelity bond" (RCW 19.310.050(1)), Travelers' issuance of the statutorily-required policy manifests an intent to assume a direct obligation to the insured's clients as specified in the statute.

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT                -7-

Although the statute does not expressly preclude a policy limitation that requires absolute honesty on the part of the facilitator in the processing of a claim, such a provision would clearly frustrate the purpose of the fidelity bond requirements.  That is, if a fidelity policy can be voided because the exchange facilitator who fraudulently absconded with a client's money was not entirely forthcoming in making a claim (or failed to timely confess to the insurer that it had engaged in fraud), a significant percentage of facilitated transactions would be uncovered.  In similar situations, Washington courts decline to "enforce limitations in insurance contracts which are contrary to public policy and statute" and ignore definitions and/or conditions of coverage that would frustrate the purpose of a governing statute.  Fireman's Fund Ins. Co. v. Puget Sound Escrow Closers, Inc., 96 Wn. App. 227, 241-42 (1999) (refusing to enforce fee requirement in policy where statute required coverage for unintentional errors and omissions of escrow agent without mention of payment of a fee for services).  See also Mendoza v. Rivera-Chavez, 140 Wn.2d 659, 666-67 (2000) (refusing to enforce felony exclusion in automobile policy – which would have vitiated coverage if driver were guilty of vehicular homicide – where legislature intended to provide compensation to those injured in car accidents); Estate of Jordan v. Hartford Accident and Indem. Co., 120 Wn.2d 490, 504-05 (1993) (refusing to enforce limitation on type of fraudulent and dishonest acts that would be covered where statute required a fidelity bond for "any fraudulent and dishonest acts").  The same result applies here.  An innocent third-party beneficiary of a fidelity policy will not be denied coverage simply because the facilitator, whose potential untrustworthiness was the very risk against which the policy was obtained, lied.

   Having determined that 1031 ECI's misstatements regarding the nature and scope of the loss of clients' money cannot preclude a third-party beneficiary's claim to coverage under RCW 19.310.050(1), the Court finds that the proposed amendment to add a negligence claim is not futile.  Because a reasonable jury could conclude that Bell-Anderson, acting as Travelers' agent, negligently failed to obtain a policy that provided the statutorily-required coverage, leave

to amend will be granted.

For all of the foregoing reasons, defendant's "Motion for Judicial Notice of Court Documents" (Dkt. # 19), defendant's "Motion for Summary Judgment" (Dkt. # 21), and "Plaintiff's Motion for Partial Summary Judgment re Standing and Scope of Coverage" (Dkt. # 24) are GRANTED in part and DENIED in part. Plaintiff's breach of contract, bad faith, and Consumer Protection Act claims fail as a matter of law and are hereby DISMISSED. Plaintiff may, within fourteen days of the date of this Order, file an amended complaint asserting a negligence claim as discussed in this Order.

Dated this 18th day of November, 2013.

Robert S. Lasnik
United States District Judge