UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
)
MUSE APARTMENTS, LLC, )
                                  )    Case No. C12-2021RSL
                Plaintiff, )
     v. )
                                  )    ORDER GRANTING PLAINTIFF'S
TRAVELERS CASUALTY AND )    MOTION FOR PARTIAL SUMMARY
SURETY COMPANY OF AMERICA, )    JUDGMENT
                                  )
                Defendant. )
_____ )

       This matter comes before the Court on "Plaintiff's Motion for Partial Summary Judgment re: Agency" (Dkt. # 86) and defendant's "Cross-Motion for Summary Judgment" (Dkt. # 99). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012). Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

---

[1] The Court has considered the cross-motions and all supporting memoranda together. See LCR 7(k). Because it does not impact the resolution of the issues raised in the cross-motions for summary judgment, the October 12, 2012, declaration of D. Richard Dance (Dkt. # 26, Ex. A) has not been considered. All other evidentiary objections are overruled.

ORDER GRANTING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT

On May 13, 2009, KC McNamara of Bell-Anderson Agency, Inc., sent an email to Richard Dance of 1031 ECI, LLC:

> Hello Richard,
>
> My name is KC McNamara with Bell-Anderson Insurance.  I represent a number of companies with great programs for real estate exchangers and wanted to offer that to you, and see if you would have some interest in seeing some different options for renewal.  If so, please give me a call and we can talk further.
>
> Best regards,
>
> KC McNamara
> Bell-Anderson Agency, Inc.

Decl. of K.C. McNamara (Dkt. # 100), Ex. A.  Mr. Dance indicated an interest in hearing about fidelity and errors and omissions policies that were available.  Id.  Through a process having an unfortunate resemblance to the game "Whisper Down the Lane," Mr. Dance's request for a specific type of insurance coverage was passed up a chain of insurance agencies and came back with a policy issued by defendant Travelers Casualty and Surety Company of America that did not provide the coverage Mr. Dance had requested.  The question raised by the cross-motions for summary judgment is whether Travelers can be held responsible for any negligence on Bell-Anderson's part.[2]  The short answer under Washington law is "yes."

In his search for a fidelity policy, Mr. Dance provided Mr. McNamara with an application packet.  Decl. of Kevin Grove (Dkt. # 102) at ¶ 3.  The packet was routed through American E&S Brokers to Universal SRV Agency, Inc., which passed it on to Travelers.  Decl. of K.C. McNamara (Dkt. # 100) at ¶ 5; Decl. of Kevin Grove (Dkt. # 102) at ¶ 6.  There is no indication in the record that Mr. Dance knew that American E&S or Universal SRV Agency had any role in the transaction.  The proposal that came back to Mr. McNamara from Travelers did not cover theft of client property, but when it was conveyed to Mr. Dance, he was assured that the policy "insures against loss resulting directly from theft of client money or property by an

---

[2] The Court had not, contrary to plaintiff's assumption, previously determined this issue.

ORDER GRANTING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT           -2-

identified employee or owner of the insured." Decl. of Kevin Grove (Dkt. # 102), Ex. B; Second Decl. of K.C. McNamara (Dkt. # 101), Ex. 7; Decl. of D. Richard Dance (Dkt. # 26), Ex. C.

During the relevant time period, Bell-Anderson Agency, Inc., was designated as Travelers' appointed agent with the State of Washington's Office of Insurance Commissioner. Decl. of Stephanie L. Grassia (Dkt. # 27), Ex. I. The "Agency Contract" between Travelers and Bell-Anderson authorized Bell-Anderson to "solicit applications for policies and bind, execute and service policies and endorsements" for bond, commercial property-casualty (excluding National Accounts), and personal property-casualty policies. Decl. of Stephanie L. Grassia (Dkt. # 87), Ex. B. Travelers does not dispute that Bell-Anderson was authorized to solicit and sell the policy at issue here. Rather, it argues that Bell-Anderson did not exercise that authority in this case and was instead pursuing its own business interests and/or acting as 1031 ECI's agent.

Plaintiff argues that, under Chicago Title Ins. Co. v. Wash. State Office of the Ins. Comm'r, 178 Wn.2d 120 (2013), the kind of transaction-by-transaction analysis urged by Travelers is unnecessary because an insurance agent with authority to solicit and sell policies binds the insurer whenever it acts within the scope of that authority. In Chicago Title, the insurer's authorized agent violated Washington's anti-inducement statutes in a number of ways, including "wining and dining" potential clients. The Office of Insurance Commissioner ("OIC") sought to hold the insurer liable for the unlawful solicitations of its agent. After establishing that the agent had the authority to solicit business on behalf of the insurer and that the agent had, in fact, engaged in solicitation (178 Wn.2d at 134-35), the Washington Supreme Court held that, because the agent was doing exactly what the insurer had appointed it to do, the insurer was responsible for any unlawful solicitation (178 Wn.2d at 135). The court was unimpressed by Chicago Title's argument that, because its contract with the agent limited the agent's ability to market or solicit on the insurer's behalf, the agent's acts were outside the scope of its authority and did not bind the insurer. Quoting Pagni v. N.Y. Life Ins. Co., 173 Wash. 322, 349-50 (1933), the Supreme Court found that:

ORDER GRANTING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT          -3-

> an insurance company is bound by all acts, contracts, or representations of its agent, whether general or special, which are within the scope of his real or apparent authority, *notwithstanding they are in violation of private instructions or limitations upon his authority*, of which the person dealing with him, acting in good faith, has neither actual nor constructive knowledge.

178 Wn.2d at 136 (emphasis in Chicago Title). Where the governing statutes and regulations allow an agent to solicit business and sell policies on the insurer's behalf, "the principal cannot excuse itself from vicarious liability through an undisclosed private arrangement that purports to restrict that authority." Id. If that were not the case, the regulatory standards regarding agency in the insurance context "would be defeated" because "an insurer could gain the benefits of appointing an agent . . . while waiving any attendant liability through contract." Id.

Travelers argues that Chicago Title does not apply because Bell-Anderson did not solicit business on Travelers' behalf in this case. This argument is based on the following facts: (1) Mr. McNamara and Mr. Dance both considered Bell-Anderson to be 1031 ECI's broker, not Travelers' agent; (2) Travelers had contact with, and paid a commission to, only Universal SRV Agency; (3) the industry, represented through the expert opinion of Neal Bordenave, would consider Bell-Anderson to be 1031 ECI's agent in the circumstances presented here; and (4) case law establishes that insurers are not liable for the acts of an insured's broker. Dkt. # 99 at 5, 12-16. Each of these arguments is addressed below.

If, as Travelers maintains, Mr. Dance had "hired Mr. McNamara to go to the marketplace and find a fidelity bond" (Dkt. # 99 at 15) or were otherwise aware that Mr. McNamara was not acting as an agent of the insurance companies he represented when he offered to assist 1031 ECI with its insurance needs, both Pagni and Chicago Title suggest that such knowledge would release Travelers from any liability for Bell-Anderson's acts. The facts, however, do not support this argument. Mr. McNamara reached out to Mr. Dance without prior introduction, announced that he represented "a number of companies with great programs for real estate exchangers," and offered to obtain quotes for 1031 ECI. At the time, Mr. Dance

ORDER GRANTING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT          -4-

thought that Mr. McNamara was hawking "existing programs for real estate facilitators" and believed that the "various insurance companies" he mentioned already had in place the type of policy Mr. Dance needed.  Decl. of Marc Rosenberg (Dkt. # 103), Ex. 1 at 37-38.  The record shows that Bell-Anderson represented that it was authorized to solicit and sell policies for a number of companies and, after hearing what 1031 ECI needed, sold 1031 ECI a Travelers policy.  There is no indication that Mr. Dance was aware that Bell-Anderson turned to other insurance agencies to help place the policy or had any reason to suspect that Bell-Anderson was acting in any capacity other than as the agent of the insurance company that ultimately sold him the policy.  Contrary to Travelers' assertion, Mr. Dance has not conceded that "Bell-Anderson was acting as ECI's broker and not as Travelers['] agent in the specific transaction at issue in this case."  Dkt. # 99 at 12.

Travelers next argues that because it did not directly pay Bell-Anderson a commission, because there were intermediary wholesalers between the insurer and Bell-Anderson, and because Bell-Anderson had contractual obligations to industry participants other than Travelers, the industry would consider Bell-Anderson to be 1031 ECI's agent in this case. These arguments are based on the type of private, undisclosed considerations that were rejected in Chicago Title.  Whatever internal classifications, contractual limitations, and/or operating assumptions the industry may have adopted, Chicago Title stands for the proposition that limitations on an agent's authority that are hidden from insureds, even if set forth in a contract, do not define or redefine the agency relationship and will not excuse the principal from liability for the acts of its agent.  As discussed above, there is no factual evidence supporting the proposition that Bell-Anderson was Mr. Dance's agent in the summer of 2009.  Mr. McNamara approached Mr. Dance in an attempt to sell insurance (*i.e.*, he solicited under Washington law) and ultimately sold 1031 ECI a Travelers policy.  RCW 48.17.010(13) and (14).  From Mr. Dance's perspective, Bell-Anderson was authorized to solicit and sell Travelers' policies and did so in this instance.  Although Mr. Bordenave opines that Mr. Dance hired Mr. McNamara as his

ORDER GRANTING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT             -5-

broker, there is no evidence to support that conclusion.  Mr. McNamara initiated the relationship through an overt solicitation, Mr. Dance thought that Mr. McNamara was offering his principals' wares for sale, and there is no indication that Mr. Dance or 1031 ECI paid Bell-Anderson for the services rendered in this transaction.  The various invoices in the record suggest that Bell-Anderson was paid by American E&S Insurance Brokers, which authorized Bell-Anderson to retain a commission out of the premium it remitted.  See Decl. of K.C. McNamara (Dkt. # 100), Ex. O.  While Bell-Anderson was later appointed as "broker of record" for 1031 ECI, the first Travelers policy issued because Travelers' authorized agent reached out to a potential insured (with whom the agent had no prior relationship), offered to sell insurance, and sold it a Travelers policy.  Having authorized Bell-Anderson to act on its behalf and having accepted the benefits of the solicitation and sale at issue here, Washington law holds Travelers responsible for the acts of its agents.  Where an acknowledged agent has solicited and sold a policy for the insurer, Chicago Title effectively precludes the insurer from hiding behind a byzantine web of undisclosed contractual and fee-sharing arrangements in order to avoid responsibility for the agent's acts.  Mr. Bordenave's opinion that the industry would characterize Bell-Anderson as 1031 ECI's agent in these circumstances flies in the face of controlling state law and does not give rise to a genuine issue of material fact.

Travelers' reliance on case law establishing that insurers are not liable for the acts of an insured's broker is misplaced.  There is no admissible evidence that Bell-Anderson was Mr. Dance's agent under Washington law at the time the first Travelers policy was placed.  In addition, this argument is based on cases from other jurisdictions in which the courts were willing to delve into the details of the relationships between the insured, the agent, and the insurer in a particular transaction.  After Chicago Title, the default assumption in Washington is that an agent authorized to solicit and sell insurance policies on behalf of an insurance company and who does, in fact, solicit and sell a policy, is acting within the scope of its authorization.  While the presumption may be rebutted by showing that the insured had actual or constructive

ORDER GRANTING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT           -6-

knowledge that the agent was acting in some other capacity – such as for its own benefit or as an agent of the insured – that is not the case here.

The Court recognizes that the facts of Chicago Title can be distinguished from this case in a number of ways: that case involved a title insurance company, it was pursued by the OIC, and the agent had an exclusive relationship with Chicago Title. While title insurance is a unique type of protection from risk, Travelers does not explain why the analysis and holding of Chicago Title, which turns on insurance statutes and the common law of agency, should be limited to title insurance agents. Nor does the fact that Chicago Title arose out of a regulatory enforcement action suggest that consumers – the persons the regulations and the Commissioner seek to protect – are not entitled to the same statutory and common law protections. Travelers focuses much of its argument on the fact that Bell-Anderson did not have an exclusive agency relationship with Travelers, pointing out that while Bell-Anderson was authorized to act as Travelers' agent, it was not compelled to do so. Travelers puts too much emphasis on the fact that Bell-Anderson initially offered to sell policies from a variety of insurance companies, rather than making a pitch related solely to Travelers' products. While the original solicitation was general and non-specific, it was clearly an attempt to sell insurance made within the scope of Bell-Anderson's authority as Travelers' agent. Travelers seems to be arguing that an agent who offers policy options on behalf of a number of insurance companies is actually no one's agent (or somehow becomes the consumer's agent). Travelers does not cite, and the Court has not found, any Washington authority supporting that proposition. Even if that were the case, any ambiguity regarding Bell-Anderson's principal in this transaction was erased when it proposed a Travelers policy for Mr. Dance's consideration. The lack of exclusivity in the original sales pitch does not alter the fact that Bell-Anderson, acting within the scope of its agency, ultimately offered to sell and sold a Travelers policy to 1031 ECI.

For all of the foregoing reasons, the Court finds that Bell-Anderson was Travelers' agent in the solicitation and sale of the fidelity policy to 1031 ECI and that, under Washington law, Travelers is vicariously liable for the acts of its agent. Plaintiff's motion for partial summary judgment (Dkt. # 86) is therefore GRANTED and defendant's cross-motion (Dkt. # 99) is DENIED.

Dated this 22nd day of December, 2014.

*[signature]*
Robert S. Lasnik
United States District Judge